[Civ. No. 3058. Fourth Dist. Apr. 6, 1943.]

ELEANORA M. TWISSELMANN et al., Respondents, v.
BERTHA M. COHN, Appellant.

Calvin H. Conron, Jr., for Appellant.

Harvey, Johnston & Baker for Respondents.

MARKS, J.—This is an appeal from a judgment decreeing specific performance of a contract to sell certain real property in San Luis Obispo and Kern Counties. Defendant was the seller and plaintiffs were the

buyers. On June 24, 1941, plaintiffs signed buyers escrow instructions addressed to the Title Insurance and Trust Company proposing to purchase the property for $4,250, which amount they deposited with the instructions. These instructions carefully detailed the terms and conditions of purchase. At the same time defendant signed and filed with the same company her instructions, which contained the following:

"I have read and approved the foregoing instructions. I will hand you Deed as called for which you will deliver when you can issue the policy of title insurance called for and obtain for me the sum of $4,250.00. The foregoing GENERAL PROVISIONS are hereby incorporated in these instructions. . . . " The "general provisions" referred to were part of the buyers' instructions.

Defendant deraigned title to the property from the estate of Charles M. Cohn, deceased, by means of a decree of partial distribution. She was entitled to a 45 per cent interest in the entire estate. When the title search to the property was being made it was discovered that the decree of partial distribution described one of the three tracts which defendant proposed to sell, as being in Section 28, Township 28 South, Range 22 East, M. D. B. & M., which Charles M. Cohn had not owned, instead of being in Section 8, Township 28 South, Range 22 East, M. D. B. & M., which was the proper description.

Under date of July 10, 1941, defendant wrote Christian Twisselmann the following letter:

"I find I cannot deliver you a clear title to the Jerry Slough property. Clearing the title will necessitate legal steps which will take quite some time, for this reason I am terminating the escrow. Please note my new address."

On July 15, 1941, Twisselmann wrote defendant as follows:

"Your letter receieieved I gave the Abstract Company instruction to except the title too that land in sec 8 at it as it is not worth anything anyway."

The title company wrote defendant as follows:

"Mr. Chris Twisselmann called today in answer to your letter stating that you could not deliver clear title to Section 8 and wished to allow him to withdraw from the escrow.

"Mr. Twisselmann does not wish to withdraw from the escrow but wants to proceed and take title by quitclaim

deed to the property in Section 8 and take whatever title or claim you may have in accordance with a copy of his Amended Instructions to us which we enclose herewith.

"Please advise us if this is satisfactory to you."

Defendant first urges that the separate papers signed by the parties did not constitute a contract for the sale of the real property which can be specifically enforced.

The escrow instructions in the instant case are identical in legal effect with those set forth in *Tuso* v. *Green*, 194 Cal. 574 [229 P. 327], which were held to constitute a binding and enforceable contract for the sale of real property. It was there said:

"A contract of sale may well consist of a proposal on the part of the seller embodied in a letter signed by him alone, and an acceptance thereof on the part of the buyer embodied in another letter signed by him alone. Such is the common practice in everyday affairs. When the minds of the parties meet, that is to say, when the respective writings match one another as to subject matter, terms, and conditions, a contract comes into existence between the parties, and when such terms and conditions are stated in writings which are signed by the respective parties the contract is none the less a contract in writing merely because each of the respective writings is signed by but one of the parties. Such a contract in writing fully satisfies the statute of frauds. (*Frost* v. *Alward*, 176 Cal. 691 [169 P. 379]; *Merkeley* v. *Fisk*, 179 Cal. 748 [178 P. 945]; 12 Cal.Jur. 904, and cases cited.) In construing such a contract the separately executed instruments are to be considered and construed together as one contract. So construing and considering the two instruments entitled escrow instructions herein, the one signed by plaintiffs and the other by defendant, we find a complete contract of sale and purchase, containing all of the necessary terms, covenants and conditions. In such situation the mutual stipulations of the parties, the actual conveyance in escrow by one and the promise by the other to pay the price, both being valid, constituted a sufficient consideration and created a valid escrow. (*Rogers etc. Co.* v. *Southern California etc. Co.*, 159 Cal. 735 [35 L.R.A. N.S. 543, 115 P. 934].)"

It is next urged that as defendant made an honest mistake as to her title to the property, and as she did not have clear title to part of the property, she could revoke

the contract and it could not be specifically enforced against her. In this connection it should be remembered that she was entitled to receive a 45 per cent interest in all of the property of the estate of Charles M. Cohn, deceased, which included the property in Section 8.

This argument was held unsound in *Farnum* v. *Clarke*, 148 Cal. 610 [84 P. 166], where it was said:

"It is not necessary, in order to sustain the right to a specific performance, that at the time such performance is sought to be compelled the vendor should have a complete equitable or legal title to the land which he contracted to convey. It is sufficient that he then have some interest in the property. It is no answer for a vendor to say when specific performance is sought under his contract that the interest or title which the decree seeks to affect is not as complete as he agreed to convey. If the vendee is willing to enforce the contract against a lesser interest or a less perfect title, it does not lie with the vendor to object on that account. It is only when the vendor has no title nor interest in the lands at all that such a decree will not be awarded, for the very good reason that courts will not attempt to require done what it is impossible to do. If, however, the vendor has any interest in the property contracted to be conveyed, the vendee may enforce the contract as to whatever interest he may possess."

In the instant case the instructions of the buyers contained the following:

"AS TO PARCEL 1: It is agreed that the grantor shall retain all of the minerals under one-half the land conveyed either in 40-acre, 80-acre, or half Section parcels and that the grantees shall get all of the minerals in the balance of said land and that the grantor shall have the privilege of selecting the acreage in which she shall retain all of the minerals." It is now argued that this provision made the contract uncertain so that it could not be specifically enforced.

In *Fleishman* v. *Woods*, 135 Cal. 256 [67 P. 276], the same argument was made under a contract which permitted the owner to select four and one-half acres of land to be conveyed to defendant's assignor out of a ten-acre tract that had been improved by defendant and his assignor. In holding the contract enforceable the Supreme Court said:

"His argument is, that as appellant had the right to

make the selection of the four and one-half acres out of a specified ten acres, specific performance is not the proper remedy. There is no uncertainty as to the manner in which the selection is required to be made, nor do we see any lack of power in a court of equity to compel the selection to be made."

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 5, 1943.