[Civ. No. 27010.   Second Dist., Div. Four.   Aug. 9, 1963.]

MALIBOU LAKE MOUNTAIN CLUB, LTD., Plaintiff and
    Appellant, v. ROBERT M. ROBERTSON et al., Defend-
    ants and Respondents.

182

Gold, Sturman & Gold, J. Howard Sturman and J. George Gold for Plaintiff and Appellant.

Francis M. Reiter, Ellis D. Reiter and Floyd H. Norris for Defendants and Respondents.

BURKE, P. J.—Malibou Lake Mountain Club sought to expel one of its members for misconduct. The court held the purported expulsion not to be in good faith and declared the member still to be in good standing. From such judgment the club appeals.

The club is a corporation owning mountain property surrounding a lake. Ownership of a stock interest is not a prerequisite to membership in the club. Members are admitted to the club upon approval of the directors or a membership committee. Upon agreeing to abide by the bylaws of the corporation and to pay required dues and assessments, they are granted a license to construct a cabin or mountain dwelling on designated property of the club. The license is terminable by forfeiture for failure to pay dues, assessments and for conduct found unbecoming a member. The termination of the license terminates the right to use and occupy the dwelling, but the ex-member may sell the improvements, subject to the approval of the buyer by the club and his acceptance into club membership.

Defendant was both a stockholder in the corporation and a member of the club and, at one time, had served as a director of the club. He had constructed a cabin on property of Malibou, pursuant to his license, at a cost of approximately $35,000. He, and certain other members (both stockholders and nonstockholders), became dissatisfied with the manner in which the club and corporate activities were being carried on and, under defendant's leadership, instituted legal proceedings looking toward a receivership of the corporation. The corporate directors were joined as defendants in that action and sundry allegations of misconduct were made against them. Ultimately this proceeding failed and a judgment,

entered upon a general demurrer without leave to amend, was affirmed on appeal. (*Starbird* v. *Lane,* 203 Cal.App.2d 247 [21 Cal.Rptr. 280].)

The directors of the club, being angry at defendant and his associates in the litigation, took steps to accomplish their expulsion from the club. Pursuant to action taken at a meeting of the board of directors, defendant was served with a notice of appearance before the board which alleged essentially that defendant's activities in prosecuting the receivership action, containing scandalous charges against many of the other members of the club (alleged to be false and untrue), were part of a plan and conspiracy to destroy the club and cause its liquidation and dissolution. After several postponements, and further written notice to defendant, he appeared before the board with two attorneys, and a reporter with a tape recorder, prepared to make a recording of the proceedings. The chairman of the board denied permission to transcribe or record the meeting, assigning as the reason therefor previous unhappy experiences with reporters and difficulty in obtaining their transcripts. The chairman further ruled that only attorneys and the member whose case was under consideration (other members had likewise been charged with misconduct) would be permitted in the hearing room at any one time together with any one witness at a time whom the member might desire to appear in his behalf. Defendant and his attorneys thereupon withdrew; the attorneys alone returned and advised the board that they had instructed defendants including defendant herein not to attend the hearings, whereupon the board proceeded with the meeting.

The common charge against all members who were requested to appear at the hearing, including defendant, as reflected in the minutes of the meeting, was their participation in the receivership action against the club. We quote therefrom in part:

"It was noted that the complaints filed contained false and misleading statements and had caused great hardship, inconvenience and financial loss to the Club. Not only had the action disturbed the peace and tranquility of the Club but it had caused a severe curtailment in the amount of funds from initiation fees and transfers. Of great concern to the Board of Directors was the amount of money that the plaintiffs were willing to spend in the prosecution of this case even though to that time they had been unable to state a recognized cause

of action. These plaintiffs had posted a $7,500.00 bond to cover the defendants' costs and attorneys' fees and even following the sustaining of the last demurrer had posted an additional $5,000.00 bond bringing the total to $12,500.00. Based upon the great amount of legal work entailed, both for the plaintiffs as well as the defendants, it was obvious that total legal expenses and costs were much greater than the $12,500.00 bond posted. It was also noted that a private investigator by the name of Mr. Whitman had been retained by the plaintiff in this matter and had spent considerable time investigation [sic] and that there was evidence that said efforts were still continuing. It was felt that the amount of money being spent in the prosecution of this action was far out of proportion to the respective investments of the plaintiffs in Malibou Lake Mountain Club, Ltd., and it seemed reasonable that some sinister purpose was behind the continuance of this legal action against the club.''

Upon conclusion of the hearings, ''after full discussion,'' resolutions were unanimously adopted terminating defendant's membership for conduct unbecoming a member and inimical to the welfare of the club and cancelling his license to use the real property involved.

On July 28, 1960, Malibou sent defendant a formal notice that his membership and license had been terminated, and that pursuant to paragraph 8 of the license agreement the license termination would be effective 60 days after the date of the notice. On October 27, 1960, a formal notice was sent by Malibou to defendant, that by reason of the termination of his license, he was required to discontinue possession of the premises in question within 30 days from service of the notice. Defendant has never removed from the premises and remains in possession thereof.

In the trial below plaintiff adduced proof of the foregoing facts by introduction of documents and the testimony of one witness, the secretary of the club, who testified that he believed the receivership action ''was designed to liquidate the corporation,'' and that he was present at a rump meeting at which defendant solicited participation in the lawsuit by other members without cost to them. Plaintiff then rested; a motion for nonsuit was made and denied. Defendant thereupon called as witnesses four members of the board of directors and likewise testified in his own behalf. The court then permitted briefs to be filed and, after consideration of these

briefs and after oral argument, submitted the matter. While the case was under submission plaintiff sought leave to reopen for the purpose of offering additional testimony, the nature of which was set forth in declarations of the proposed witnesses which were filed with the notice of motion. The request to reopen was denied and judgment was rendered in favor of defendant.

In its findings of fact the court found that the attempted termination of defendant's membership in said club by the board of directors of said corporation was in bad faith and based solely upon the fact that the defendant had joined with other plaintiffs in the so-called receivership action.

Plaintiff contends that the court erred in finding that defendant was not properly expelled and in denying its motion to reopen.

The granting or denial of a motion to reopen lies in the discretion of the trial court and will not be reversed on appeal absent a clear showing of abuse of discretion. (*Faulkner* v. *Faulkner,* 148 Cal.App.2d 102, 108 [306 P.2d 585].)

No such abuse appears here. No showing was made that the testimony sought to be introduced was not known to plaintiff or was unavailable during the trial. Such a showing is a prerequisite to the granting of such a motion. Furthermore, the evidence tendered, as indicated in the lengthy written offer of proof reviewed by the trial court, was cumulative and did not contravene the evidence already admitted in the form of the minutes of the board of directors which expressly declared the reasons upon which the board acted to expel defendant from membership. The decision of the trial court was amply sustained by the evidence.

Plaintiff urges that mere participation in the receivership action was an adequate cause for exclusion from a club of Malibou's type; that social clubs are to be distinguished from unions and associations having economic or property interest motivations, and in such clubs where fraternal association is the paramount objective internal harmony and its preservation justify less cause for expulsion. Plaintiff asserts that what is proper ". . . conduct of a member of a society like the appellant is not a matter to be taken out of the hands of the society by a court, where the accused has had due notice and a fair trial in accordance with the constitution and by-laws of the society." (*Josich* v. *Austrian Benevolent Soc.,* 119 Cal. 74, 76 [51 P. 18].)

These arguments have no relevancy here. Defendant's membership was not merely one in a social club; in fact, the record is devoid of evidence to show that the ''club'' in fact carried on any social affairs whatsoever. Defendant's membership had its chief value in his license to use and occupy real property on which he had constructed substantial improvements. While he had the right to sell these improvements, if he could find a buyer acceptable to the club, his expulsion subjected him to risk of economic loss inherent in any forced sale, as well as to the loss of a valuable right to maintain and use a vacation place of his own choosing. That a proper expulsion would create no illegal forfeiture does not detract from the fact that any expulsion could create a serious loss. Under these circumstances, the applicable authorities are those cases which hold that expulsion, as from a trade union or trading exchange, where economic loss flows (*Gonzales* v. *International Assn. of Machinists,* 213 Cal.App. 2d 817 [29 Cal.Rptr. 190]; *Smetherham* v. *Laundry Workers' Union,* 44 Cal.App.2d 131 [111 P.2d 948]) requires a showing of legally adequate cause and not mere bona fides on the part of the expelling body.

█ It is clear from all the evidence (even including that proffered on the motion to reopen) that defendant's participation in the receivership proceedings was the dominant reason for his expulsion. As to any other ground, only the conclusions of witnesses, in many cases hearsay conclusions, were offered on the ultimate fact of any intent of defendant to injure the organization rather than to correct it. The prosecution, in good faith, of a legal right for redress, even if unsuccessful, is not a ground for expulsion from an organization such as this.

The findings of the trial court are sustained by the evidence and adequately support the judgment.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.