[S.F. No. 21503. In Bank. Dec. 12, 1963.]

RAYMOND LEROY KOPF, Cross-complainant and Appellant, v. H. O. MILAM et al., Cross-defendants and Respondents.

Howard B. Crittenden, Jr., for Cross-complainant and Appellant.

Elliot W. Seymour for Cross-defendants and Respondents.

TRAYNOR, J.—In this action for a real estate commission, cross-complainant, hereinafter referred to as plaintiff, appeals from a judgment for cross-defendants, hereinafter referred to as defendants. ▆▆ The appeal on the clerk's transcript and certain exhibits is treated as an appeal on the judgment roll (*White* v. *Jones*, 136 Cal.App.2d 567, 569 [288 P.2d 913]), and the sufficiency of the evidence to support the findings is therefore not open to question.

Plaintiff sought to recover his commission on the ground that he had secured a purchaser after defendants listed their property with him doing business as Wm. E. Doud & Co. The trial court found that Wm. E. Doud & Co. was a copartnership consisting of plaintiff and one Hoffman. Although both plaintiff and Hoffman were licensed real estate brokers, the trial court found that they had not secured a separate partnership license pursuant to the Real Estate Law. (Bus. &

Prof. Code, §§ 10000-10221.) It also made findings against plaintiff on the merits.

Section 10130[1] of the Business and Professions Code prohibits any person from acting as a real estate broker without a license. Section 10136[2] provides that no person may bring or maintain an action for a broker's commission without establishing that he was licensed when the cause of action arose. Section 10006[3] provides that "person" includes a copartnership.

Defendants contend that since a copartnership is a person and since all persons must be licensed to act as brokers, the partnership must be licensed as such to permit the partners to act as brokers on its behalf. Plaintiff concedes that a partnership must be licensed, but contends that it may become licensed either by securing a partnership license or by securing licenses for all of its partners. We agree with plaintiff's contention.

When each member of a real estate brokerage partnership is a licensed broker no purpose would be served by requiring an additional license. Thus, whether an applicant for a real estate broker's license is an individual or a partnership, the issuance of a license depends on whether the applicant has the following three qualifications: good character and reputation in the community,[4] specified experience as a real estate salesman or education equivalent thereto,[5] and the basic skills necessary to the transaction of a brokerage business.[6] When each member of a partnership is licensed as a broker, nothing more is required to qualify the firm for a license. It was for this reason that in *Heinfelt* v. *Arth*, 135 Cal.App. 445 [27 P.2d 420], in construing the statute that formed the basis of the present code provisions, the court held that to

---

[1] "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this State without first obtaining a real estate license from the division."

[2] "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

[3] " 'Person' includes copartnership, corporation, company and firm."

[4] Bus. & Prof. Code, §§ 10150, 10152.

[5] Bus. & Prof. Code, §10150.6.

[6] Bus. & Prof. Code, § 10153.

require a partnership license in addition to individual licenses, when all the members of the partnership were licensed, "would accomplish nothing useful in carrying out the purpose of the act and would, in fact, call for merely a double license for persons whose qualifications have already been favorably passed upon." (135 Cal.App. at p. 449.)[7]

The holding of the *Heinfelt* case does not render the provisions of the Real Estate Law governing partnership licenses superfluous. Those provisions were designed, not for firms in which all of the members are licensed brokers, but for firms in which some of the members will not act as brokers. Thus, the only regulation in the California Administrative Code that specifies a procedure for obtaining a partnership license explicitly applies only to partnerships in which not all of the members act as brokers. (Cal. Admin. Code, tit. 10, § 2743.) Furthermore, section 10158 of the Real Estate Law assumes that the partnership licensed is one in which some of the members will not act as brokers,[8] and this assumption also underlies the difference in the scope of sections 10152 and 10153. The former empowers the Real Estate Commissioner to require proof of the good character and reputation of every member of the partnership, whereas the latter provides for an examination to test the skill of only "[those partners] through whom [the partnership] proposes to act" as a broker. Thus a partnership license is required so that the licensing authorities may inquire into the integrity of a firm, some of whose members are not engaged in brokerage activities.

Our conclusion that the Real Estate Law does not prohibit individually licensed brokers from acting in partnership without a separate license finds added support from a comparison of the licensing requirements of the Business and Professions Code governing real estate brokers with those governing contractors. The Legislature used phraseology in sections 10130 and 10136 virtually identical with that used in sections 7028 and 7031, which respectively forbid any unli-

---

[7] Defendants contend that section 2740 of title 10 of the California Administrative Code, promulgated after the *Heinfelt* decision, so changes the Real Estate Law that that case should not be followed. Section 2740, however, merely rephrased and consolidated sections 10158 and 10159 of the Business and Professions Code, which were considered by the court in the *Heinfelt* case.

[8] "When a real estate license is granted to a copartnership, if it desires any of its members other than the one or ones through whom it is already licensed to act as a real estate broker, it shall procure an additional license to so employ each of such additional members."

censed "person" (which under section 7025 includes an individual, a firm, copartnership, corporation, association, or other organization, or any combination of any thereof) to engage in the business or to act in the capacity of a contractor, or to bring or maintain any action for compensation based on the transaction of such business. These provisions were apparently not designed to prevent individually licensed contractors from acting as a partnership, for the Legislature expressly provided in section 7029 that individually licensed contractors may not join forces without obtaining an additional joint license. If sections 7028 and 7031 are construed as prohibiting such action then section 7029 is redundant. Since it appears that the Legislature did not regard sections 7028 and 7031 as prohibiting individually licensed contractors from acting jointly and since those sections correspond so closely to sections 10130 and 10136, it is reasonable to conclude that the Legislature would have adopted a section comparable to section 7029 had it meant to prohibit individually licensed brokers from acting as a partnership. We hold that plaintiff may maintain this action, and we therefore reach the merits of his claim.

Defendants appointed plaintiff and his partner exclusive agents to sell certain real property owned by defendants. The partners found two purchasers, and a deposit receipt agreement embodying a contract of sale prepared by plaintiff's partner was signed by defendants and by the purchasers. This agreement provided: "The total purchase price is Eighty Seven Thousand ($87.000) Dollars. The balance is to be paid within —— days from date of acceptance hereof by Seller as follows: Subject to Buyers assuming an existing loan of approximately Fifty Eight Thousand ($58.000) Dollars secured by first D/T and bearing 6 (six %) per cent interest. . . ."

The principal of the existing loan was in fact approximately $54,000 and was evidenced by a note held by the Bank of California, which provided, "In case any change is made in the title to all or any part of the property described in the deed of trust securing this note, the whole of said principal shall forthwith become due and payable at the election of the holder of this note." The purchasers made a cash down payment into escrow, but for reasons not specified in the record, the transaction proceeded no further. Defendants elected not to keep any of the purchasers' money, and plaintiff received no commission.

The trial court found that the clause "Subject to Buyers assuming an existing loan," was a condition made for the defendants' benefit; that the purchasers never undertook to assume the loan and were never ready, willing, and able to assume it or to perform the other conditions in the deposit receipt agreement; that defendants were at all times prepared to convey title to the property upon performance of the conditions; and that defendants were not estopped to deny that the purchasers were ready, willing and able to perform.

Plaintiff's claim depends on whether the purchasers he produced were ready, willing, and financially able to perform. (E.g., *Meyer* v. *Selggio*, 80 Cal.App.2d 161, 164 [181 P.2d 690].) ▮ When a vendor enters a valid unconditional contract of sale with a purchaser procured by a broker, the purchaser's acceptability is conclusively presumed because the vendor is estopped to deny the qualifications of a purchaser with whom he is willing to contract. (See *Edwards* v. *Billow*, 31 Cal.2d 350, 359-360 [188 P.2d 748] and cases cited; *McNamara* v. *Steckman*, 202 Cal. 569, 572-573 [262 P. 297].) ▮ When the contract is conditional, however, the broker's commission is not earned if the condition is not performed. (*Colton* v. *O'Brien*, 217 Cal. 551, 553 [20 P.2d 43]; *Wiseman* v. *Ross*, 202 Cal.App.2d 138, 142 [20 Cal.Rptr. 565]; see *Britschgi* v. *McCall*, 41 Cal.2d 138, 144-145 [257 P.2d 977].)

▮ Although the crucial clause in the contract, "Subject to Buyers assuming an existing loan," is couched in the language of condition, plaintiff, relying on asserted customary practice, contends that the parties intended the clause as a promise by the purchasers to assume the existing loan concurrently with the execution of a deed by defendants. Defendants contend that the contract was contingent on the purchasers' establishing their financial ability by arranging with the Bank of California to assume the existing loan.

A reading of the contract in conjunction with the note evidencing the loan to be assumed supports defendants' interpretation. The note provided that if any change were made in the title to the property, the holder of the note could forthwith declare the entire principal amount of over $50,000 due and payable. If the purchasers assumed this loan merely by accepting a deed so providing, both parties would immediately subject themselves to liability for the entire principal of the loan. In view of this drastic consequence to both

parties and the conditional language used by them, the trial court could reasonably conclude that they intended to make the sale contingent on the purchasers' obtaining the approval of the holder of the note prior to any change in title to the property. (See *Universal Sales Corp.* v. *California Press Co.*, 20 Cal.2d 751, 772 [128 P.2d 665]; *Estate of Rule*, 25 Cal.2d 1, 10-11 [152 P.2d 1003, 155 A.L.R. 1319]; 3 Witkin, California Procedure, Appeal, § 89(a).) Since the contract was conditional, no presumption of the purchasers' qualifications arises, and the finding of the trial court that they were not ready, willing, and able to perform is conclusive.

The judgment is affirmed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied January 7, 1964.